UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| Shellene McCagg, | |
| Plaintiff, | CASE NO. 3:23-cv-917 |
| v. | COMPLAINT |
| Da Vinci Automotive, Inc., | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

**Nature of this Action**

1. Shellene McCagg ("Plaintiff"), brings this action against Da Vinci Automotive, Inc. ("Defendant") under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), and the Colorado Consumer Protection Act, Co. Rev. Stat. § 6-1-101 *et seq.* ("CCPA").

2. Specifically, Plaintiff alleges that, among other things, Defendant knowingly and intentionally sold her a motor vehicle—a 2016 BMW 650I—that was stripped of its emissions control equipment, including its catalytic converter.

3. Plaintiff further alleges that Defendant falsely certified that the subject vehicle included those required emissions control components, in violation of Fla. Stat. § 316.2935.

**Parties**

4. Plaintiff is a natural person who resides in both Denver, Colorado and

1

Sanibel Island, Florida.

5. Defendant is a Florida corporation with a principal place of business in Jacksonville, Florida.

6. Defendant owns and operates the "Da Vinci Automotive" car dealership, which is a licensed motor vehicle dealership based in Jacksonville, Florida.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because Plaintiff and Defendant are citizens of different states, transacted across state lines, and because the amount in controversy exceeds $75,000.

8. Specifically, as a result of Defendant's actions, Plaintiff sustained actual damages of *at least* $38,493.58 for her vehicle, and Plaintiff is entitled to recover up-to treble damages for Defendant's violations of the CCPA, along with her reasonable attorneys' fees, pursuant to both FDUTPA and the CCPA.

9. Venue is proper before this Court under both 28 U.S.C. § 1391(b)(1) and (b)(2) as Defendant is headquartered and operates its business out of this district, and a significant portion of the events giving rise to this action occurred in this district.

10. In particular, Defendant transacted with Plaintiff from this district, and Defendant engaged in the violative conduct in this district.

## Factual Allegations

11. In or around August, 2022, Plaintiff began researching used cars for potential purchase.

12. In early September, 2022, Plaintiff reached out to Defendant to inquire regarding potential purchase of a 2016 BMW 650I advertised on Defendant's website.

13. On or about September 9, 2022, Plaintiff inquired regarding a quote for the purchase of that vehicle, along with shipment of that vehicle to her address in Denver, Colorado.

14. On September 21, 2022, Plaintiff executed the purchase of her vehicle with Defendant.

15. Pursuant to that purchase transaction, Defendant provided the following certification:

> As a motor vehicle dealer licensed to conduct business in the State of Florida, I hereby certify that the following air pollution emission control devices and system of this vehicle, if installed by the vehicle manufacturer or importer, have not been tampered with by me or by my agents, employees, or other representatives. I also hereby certify that I or persons under my supervision have inspected this motor vehicle and, based on said inspection, have determined that the air pollution control devices and systems listed below, if installed by the vehicle manufacturer or importer, are in place and appear properly connected and undamaged as determined by visual observation.

*See* Exhibit A.

16. On September 21, 2022, Defendant, by and through its employee or

agent, Lubomir Kalaj, signed this certification. *See id.*

17. Upon information and belief, Mr. Kalaj is and was authorized to make this certification on behalf of Defendant, as Mr. Kalaj is Defendant's registered agent and is listed as president of Defendant.

18. However, Defendant's certification was false.

19. Plaintiff went forward with this purchase contract based on the representations by Defendant that this vehicle was safe for the public roads and was in compliance with federal and state laws regarding air pollution and emission standards and corresponding equipment.

20. As an ordinary consumer, Plaintiff did not have the means or knowledge to independently verify whether this certification was false prior to executing the purchase contract.

21. On September 28, 2022, Plaintiff took possession of the vehicle in Denver, Colorado, after Defendant shipped and delivered the vehicle to Plaintiff.

22. Immediately after taking possession of the vehicle, among other things, Plaintiff noticed that the vehicle's dashboard was separating from the windshield, and that the vehicle's exhaust system was extremely loud.

23. That same day, September 28, 2022, and for several days thereafter, Plaintiff repeatedly attempted to speak with Defendant regarding the noise issue and other related defects.

24. On or about September 31, 2022, Defendant's representative finally responded to Plaintiff's outreaches, dismissing her complaints, and instead attributing the noise to a generalized notion that "sportscars are loud."

25. On or about October 4, 2022, Plaintiff took her vehicle to a local BMW dealership–BMW of Denver Downtown—for inspection, and was informed by that dealership that her vehicle was stripped of all of its Original Equipment Manufacturer ("OEM") emissions control components, including the catalytic converters and mufflers, and instead replaced them with a welded "straight pipe" modification. *See* Exhibit A.

26. Specifically, the Denver BMW dealership's mechanic characterized the damage to Plaintiff's newly-acquired vehicle as if the vehicle had been through a "chop shop" and illegally modified.

27. The "straight pipe" illegal exhaust modification was apparent based on a visible inspection by a trained mechanic at the Denver BMW dealership. *See* [BMW Denver Inspection Video.mp4](BMW Denver Inspection Video.mp4).

28. Plaintiff received a quote of $12,510.25 from the Denver BMW dealership to repair and replace the absent emissions control devices. *See* Exhibit B.

29. Plaintiff was also informed that—in order to allow the vehicle to operate without required catalytic converters without triggering "check engine"

5

lights or other internal warnings—the vehicle's computer must have been illegally modified to bypass warnings related to those stripped components.

30. To be sure, Plaintiff did not modify or tamper with her vehicle's air pollution or emissions control devices.

31. Shortly thereafter, Plaintiff's newly-acquired vehicle also experienced multiple electrical problems, requiring her to spend $1,579.21 to replace spark plugs, ignition coils, and return the vehicle to manufacturer-recommended oil and fluid levels. *See* Exhibit C.

32. Over a period of several months, between October, 2022 and early January, 2023, Plaintiff repeatedly called and emailed Defendant in an effort to get Defendant to either fix her defective vehicle—at its cost—or refund her the full purchase price.

33. During this period, Defendant ignored all of Plaintiff's calls and emails.

34. As a result, on February 24, 2023, Plaintiff delivered to Defendant a demand letter addressing her FDUTPA claims, pursuant to Fla. Stat. § 501.98.

35. On March 29, 2023, more than thirty days after receipt of the aforementioned letter, counsel for Defendant acknowledged receipt of the demand letter but did not provide any substantive response or challenge the sufficiency of the letter under Fla. Stat. § 501.98.

36. On April 24, 2023, counsel for Defendant first provided a substantive response to Plaintiff's demand letter.

37. On May 23, 2023—approximately three months after receipt of Plaintiff's demand letter, *new* counsel for Defendant appeared and rejected Plaintiff's settlement demand, and after subsequent discussions failed to resolve Plaintiff's claims, this lawsuit follows.

38. On or about July 24, 2023, Plaintiff returned to the Denver BMW dealership for an updated quote and inspection to confirm if any software modifications were performed to her vehicle in order for it to not show any "check engine" lights despite the tampering to the emissions control systems.

39. Denver BMW identified additional tampering to the software controls for Plaintiff's vehicle, and was quoted a total cost of $13,918.23 to replace the catalytic converter and undo the software changes to the vehicle.

40. Notably, upon further investigation, other consumers appear to have complained of materially identical conduct:



41. As a result, upon information and good faith belief, Defendant routinely fails to accurately or properly inspect vehicles it sells to consumers for the presence of *required* air pollution and emission control devices, while nevertheless certifying that those devices are installed in their vehicles.

### Count I
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201 *et seq.*

42. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-41.

43. Plaintiff is a "consumer" as defined by Fla. Stat. § 501.203(7).

44. Defendant was engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

45. The FDUTPA prohibits, among other things, "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

46. By making written and signed representations to Plaintiff that the vehicle she purchased from Defendant was visually inspected and possessed required air pollution control devices despite no such devices being in place, Defendant made material representations about the vehicle that were false.

47. Specifically, because the catalytic converters and muffler were missing from the vehicle, either Defendant misrepresented whether it visually inspected the vehicle to check for such parts, or it misrepresented the presence of such parts on the vehicle.

48. Because the required air pollution control devices were removed from Plaintiff's vehicle yet were readily apparent based on a visual inspection of the vehicle, Defendant willfully made false representations regarding the condition of the vehicle.

49. Additionally—specific to motor vehicle dealers—it is unlawful for Defendant to misrepresent the condition of a vehicle it offers for sale. Fla. Stat. §§ 501.976(3)-(4).

50. Pursuant to Fla. Stat. § 316.2935(1)(a):

> It is unlawful for any person or motor vehicle dealer . . . to offer or display for retail sale or lease, sell, lease, or transfer title to, a motor vehicle in Florida that has been tampered with in violation of this section, as determined pursuant to subsection (7). Tampering is defined as the dismantling, removal, or rendering ineffective of any air pollution control device or system which has been installed on a motor vehicle by the vehicle manufacturer except to replace such device or system with a device or system equivalent in design and

function to the part that was originally installed on the motor vehicle.

51.     The act of misrepresenting the presence of an air pollution control device or system is unfair, deceptive, or unconscionable as it deceives the consumer into believing a vehicle satisfies state or federal emissions laws, when in fact the vehicle does not.

52.     Pursuant to Fla. Stat. § 501.203(3)(c), "a *per se* violation of the FDUTPA may be founded on the alleged violation of any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.'" *Cox v. Porsche Fin. Servs., Inc.*, 342 F. Supp. 3d 1271, 1287 (S.D. Fla. 2018).

53.     Defendant knew, or should have known, that its conduct violated the FDUTPA.

54.     Defendant had an ongoing duty to all of its customers to refrain from unfair and deceptive practices under the FDUTPA in the course of its business.

55.     Plaintiff was harmed by Defendant's misrepresentations because she paid substantially more for the vehicle than it was worth had Defendant disclosed that it was stripped of its required air pollution control devices (and illegally modified to conceal those stripped components), severely impairing the value of the vehicle beyond the cost of mere repair and replacement of those stripped components.

56. Had Plaintiff known that the subject vehicle was stripped of its catalytic converters and muffler, she would not have purchased the vehicle.

57. As a result of Defendant's violations, Plaintiff is entitled to recover actual damages and attorneys' fees, costs, and any other just and proper relief available under the FDUTPA pursuant to Fla. Stat. § 501.211.

### Count II
### Violation of the Colorado Consumer Protection Act
### Co. Rev. Stat. § 6-1-101 *et seq.*

58. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-41.

59. Plaintiff and Defendant are "[p]ersons" as defined by Co. Rev. Stat. § 6-1-102(6).

60. Plaintiff's claim against Defendant arises out of a "sale" as defined by Co. Rev. Stat. § 6-1-102(10).

61. The CCPA prohibits, among other things, "(b) Either knowingly or recklessly makes a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;" "(e) Either knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;" "(g) Represents that goods, food, services, or property are of

a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another;" and "(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Co. Rev. Stat. § 6-1-105.

62. By making written and signed representations to Plaintiff that the vehicle she purchased from Defendant was visually inspected and possessed required air pollution control devices despite no such devices being in place, Defendant made material representations about the vehicle that were indeed false.

63. Specifically, because the catalytic converters and muffler were missing from the vehicle, either Defendant misrepresented whether it visually inspected the vehicle to check for such parts, or it misrepresented the presence of such parts on the vehicle.

64. Because the required air pollution control devices were removed from Plaintiff's vehicle, and because such a removal would be apparent to a dealership's visual inspection of the vehicle, Defendant fraudulently, willfully, knowingly, or intentionally made false representations regarding the condition of the vehicle, which caused injury to Plaintiff.

65. Plaintiff was harmed by Defendant's misrepresentations because she

paid substantially more for the vehicle than it was worth had Defendant disclosed that it was stripped of its required air pollution control devices (and illegally modified to conceal those stripped components).

66. Defendant's conduct significantly impacted or harmed the public as actual or potential customers of its business because Defendant misrepresented that the vehicle it sold contained required air pollution and emissions control devices when the vehicle did not.

67. Defendant's conduct also significantly impacted or harmed the public at-large by apparently affecting multiple consumers, and also by causing Plaintiff's vehicle to emit excess pollutants into the atmosphere and generate excessive and irritating noise when Plaintiff operated her vehicle.

68. Moreover, Defendant sold a vehicle that potentially violated multiple other Colorado laws regarding noise control devices, *see* Co. Rev. Stat. § 42-4-225, as well as emission control devices, *see Co*. Rev. Stat. § 25-7-101 *et seq.*, which are in effect to legally protect both the environment, the public, and Plaintiff herself from environmental pollution or excessive or unusual noise impacting public safety on public roads.

69. Defendant knew, or should have known, that its conduct violated the CCPA.

70. Defendant had an ongoing duty to all of its customers to refrain from

unfair and deceptive practices under the CCPA in the course of its business.

71. Had Plaintiff known that the subject vehicle was stripped of its catalytic converters and muffler, she would not have purchased the vehicle.

72. Because Defendant fraudulently, willfully, knowingly, or intentionally made false representations regarding the condition of the vehicle, Defendant committed "bad faith conduct" as defined in Co. Rev. Stat. § 6-1-113(2.3).

73. As a result of Defendant's violations, Plaintiff is entitled to recover actual damages, treble damages, and attorneys' fees, costs, and any other just and proper relief available under the CCPA pursuant to Co. Rev. Stat. § 6-1-113.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a. Adjudging and declaring that Defendant violated the FDUTPA and the CCPA;

    b. Awarding Plaintiff damages under Fla. Stat. § 501.211(2) and Co. Rev. Stat. § 6-1-113(2)(a)(I);

    c. Awarding Plaintiff treble damages under Co. Rev. Stat. § 6-1-113(2)(a)(III);

    d. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to Fla. Stat. § 501.211(2) and Co. Rev. Stat. §

      6-1-113(2)(b);

    e.    Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

    f.    Awarding such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: August 4, 2023.

*/s/ Bryan A. Giribaldo*
Bryan A. Giribaldo – *Lead Counsel*
Alex D. Kruzyk
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tele: (561) 726-8444
bgiribaldo@pkglegal.com
akruzyk@pkglegal.com

*Counsel for Plaintiff*